# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

LYDIA A. PEDUZZI,

                                        Plaintiff,

vs.

CASE NO.:

**JURY TRIAL DEMANDED**

EQUIFAX INFORMATION SERVICES LLC, EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION LLC, and SYNCHRONY BANK N.A.,

                    Defendants.

## COMPLAINT

Lydia A. Peduzzi ("Plaintiff") brings this Complaint against Equifax Information Services LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), Trans Union LLC ("Trans Union") (collectively, the "credit bureau defendants"), and Synchrony Bank N.A. ("Synchrony Bank") (all collectively, "Defendants") for actual, statutory, and punitive damages, costs, and attorney's fees, for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq*.

## PRELIMINARY STATEMENT

1.    This is an action for statutory, actual, and punitive damages; costs; and attorney's fees brought pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x.

1

2.     The purpose of the FCRA is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, ***accuracy***, relevancy, and proper utilization of such information." 15 U.S.C. § 1681 (emphasis added). In furtherance of its underlying purposes, the FCRA sets out requirements and obligations that consumer reporting agencies, § 1681i, and their furnishers of information, § 1681s-2(b), must follow when consumers dispute the accuracy of the information reported in their credit reports.

3.     This case concerns Defendants' inaccurate reporting of a credit card account on Plaintiff's Equifax, Experian, and Trans Union credit reports as having a maximum delinquency of 120 days and an unpaid balance of $685.00 that was charged off. Defendants' reporting is inaccurate because Plaintiff paid the account in full in April 2019.

4.     Accordingly, Plaintiff brings claims against Equifax, Experian, and Trans Union for failing to reasonably ensure the maximum possible accuracy of Plaintiff's credit reports in violation of the FCRA, 15 U.S.C. § 1681e(b), and for their repeated failure to fulfill their reinvestigation duties in violation of the FCRA, 15 U.S.C. § 1681i.

5.     Plaintiff also brings claims against Synchrony Bank for failing to fully and properly investigate Plaintiff's disputes and to review all relevant information

provided by the credit bureau defendants in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1).

## THE PARTIES

6.     Plaintiff Lydia A. Peduzzi ("Plaintiff") is a natural person who resides in the City of Deland, County of Volusia, State of Florida, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

7.     Defendant Equifax Information Services, LLC ("Equifax") is a foreign limited liability company authorized to do business in the State of Florida and in this District.

8.     Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

9.     Defendant Experian Information Solutions, Inc. ("Experian") is a foreign limited liability company authorized to do business in the State of Florida and in this District.

10.     Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

11.    Defendant Trans Union LLC ("Trans Union") is a foreign limited liability company authorized to do business in the State of Florida and in this District.

12.    Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

13.    Defendant Synchrony Bank N.A. ("Synchrony Bank") is a foreign corporation doing business in the State of Florida and in this District. Synchrony Bank is a credit grantor and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

## JURISDICTION AND VENUE

14.    This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

15.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTS

**Plaintiff Purchases a Diamond Ring from ShopHQ in November 2018**

16.     On or about November 24, 2018, Plaintiff purchased a yellow gold diamond ring ("the ring") from ShopHQ, an online retailer previously known as Evine, in the amount of $2,959.42.

17.     After ShopHQ applied Plaintiff's "EVINE Credit/Discount" of $560.00, the total balance for the ring came out to $2,399.42.

18.     Upon completing her purchase, Plaintiff agreed to pay ShopHQ for the full value of the ring via six (6) monthly payments, the first of which was to be made on the date of purchase.

19.     On November 24, 2018, the date of purchase, Plaintiff made a payment of $532.76 toward the balance of the ring using her Evine credit card, Acct #604577120931XXXX ("the Synchrony Bank/ShopHQ account").

20.     Synchrony Bank is the financial institution that issued Plaintiff's ShopHQ/Evine Credit Card.

21.     As of November 25, 2018, the remaining balance owed by Plaintiff for the ring was $1,866.66.

**Plaintiff Pays the Synchrony Bank/ShopHQ Account in Full in April 2019**

22.     Pursuant to the terms of her agreement with ShopHQ/Synchrony Bank, Plaintiff made the final five (5) monthly installment payments to Synchrony Bank in the amount of $373.33 from December 2018 to April 2019.

23.     Each of Plaintiff's five (5) remaining monthly installment payments to Synchrony Bank were made via money order from Amscot in Deland, Florida.

24.     Despite making her final payment in April 2019, Plaintiff accidentally made an additional payment of $373.34 on the Synchrony Bank/ShopHQ account in May 2019.

25.     On or about June 3, 2019, Synchrony Bank issued Plaintiff a refund check for her overpayment in the amount of $346.34. As of this date, Plaintiff had still overpaid the Synchrony Bank/ShopHQ account in the amount of $27.00. Synchrony Bank has yet to reimburse Plaintiff for this overpayment.

26.     At the end of April 2019, Plaintiff's outstanding balance on the Synchrony Bank/ShopHQ account was $0.00, at which time the account was closed.

**Plaintiff Purchases and Returns Two Sets of Earrings from ShopHQ in May and June 2019**

27.     On or about May 9, 2019, Plaintiff purchased a set of yellow gold extra-large hoop earrings from ShopHQ in the amount of $371.37 and paid in full.

28.     On or about June 3, 2019, Plaintiff purchased a different set of yellow gold extra-large hoop earrings from ShopHQ in the amount of $425.46 and paid in full.

29.     On or about June 3, 2019, Plaintiff returned both sets of yellow gold hoop earrings to ShopHQ and was issued a full refund.

30.     As of June 3, 2019, Plaintiff's outstanding balance on the Synchrony Bank/ShopHQ account was still $0.00.

**Plaintiff Begins Receiving Notice of Late Payments from Synchrony Bank in August 2019**

31.  In or about August 2019, Plaintiff received a Notice of Late Payment from Synchrony Bank indicating she had a past due payment on the Synchrony Bank/ShopHQ account, despite the fact that the account had been paid in full and closed for approximately four months.

32.  As of September 12, 2019, Plaintiff's online ShopHQ account "Value Pay Summary" indicated that Plaintiff had a $0.00 balance on the Synchrony Bank/ShopHQ account.

33.  Between September and December 2019, Plaintiff received five more Notices of Late Payment from Synchrony Bank indicating she had past due payments on the Synchrony Bank/ShopHQ account and threatening debt collection activity in the event of nonpayment. In each notice, the outstanding balance increased due to late fees and additional interest. By December 2019, the Notice of Late Payment from Synchrony Bank reflected an unpaid balance amount of $539.91, $176.00 of which was considered past due.

**Plaintiff Discovers the Inaccurate Credit Reporting in November 2019**

34.  In or about November 2019, Plaintiff obtained copies of her credit reports from Equifax, Experian, and Trans Union. Upon review, Plaintiff discovered that Synchrony Bank had reported to the credit bureau defendants that

she was at least four payment past due on her Synchrony Bank/ShopHQ account, Acct #604577120931XXXX.

35.     Prior to November 2019, Plaintiff's credit scores with the credit bureau defendants were in the upper 700s and considered excellent; however, they had now dropped to the mid-600s and were considered weak.

## TD Bank Denies Plaintiff's Credit Application for an Automobile Loan in November 2019

36.     On or about November 20, 2019, Plaintiff was seeking financing for a new automobile and submitted a credit application at a car dealership in Florida.

37.     Upon submitting a credit application to obtain the best financing rate for her vehicle purchase, the car dealership shopped Plaintiff's credit with multiple automobile lenders.

38.     TD Bank denied Plaintiff's credit application.

39.     TD Bank relied on the contents of Plaintiff's Experian credit file at the time it denied her credit application. As of November 20, 2019, the date TD Bank accessed Plaintiff's Experian credit file, it contained inaccurate, derogatory late payments reported by Synchrony Bank in regard to the Synchrony Bank/ShopHQ account, Acct #604577120931XXXX.

40.     Experian's inaccurate credit reporting adversely impacted Plaintiff's credit score and caused TD Bank to deny Plaintiff's credit application.

## Plaintiff's January 2020 Disputes with the Credit Bureau Defendants

41.    In January 2020, Plaintiff again received a Notice of Late Payment from Synchrony Bank indicating she had past due payments on the Synchrony Bank/ShopHQ account.

42.    On or about January 21, 2020, Plaintiff sent written disputes via certified mail to Equifax, Experian, and Trans Union, disputing the late payments reported on her credit reports regarding the Synchrony Bank/ShopHQ tradeline, Acct #604577120931XXXX, specifically stating that she has never missed a payment on her account, that she returned merchandise previously purchased on the account, and that ShopHQ confirmed the account has a $0.00 balance. Plaintiff requested that the credit bureau defendants correct their reporting of this account immediately.

### Plaintiff's January 2020 Dispute with Synchrony Bank

43.    On or about January 21, 2020, Plaintiff sent a written dispute via certified mail to Synchrony Bank, disputing the late payments reported on her credit reports regarding the Synchrony Bank/ShopHQ tradeline, Acct #604577120931XXXX, specifically stating that she has never missed a payment on her account, that she returned merchandise previously purchased on the account, and that ShopHQ confirmed the account has a $0.00 balance. Plaintiff requested that Synchrony Bank correct its reporting of the account immediately.

### The Credit Bureau Defendants' Method for Considering Consumer Credit Report Disputes

44. The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. *See* 15 U.S.C. § 1681i(a)(5)(D).

45. Consumer reporting agencies Equifax, Experian, Trans Union, and Innovis have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows data furnishers to create and respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

46. That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II." It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

47. Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

48. Metro II codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification (ACDV) electronic form.

49. The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

50.   These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

51.   Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

52.   The data furnishers then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. *See* 15 U.S.C. § 1681s-2(b).

53.   Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via eOSCAR.

## The Credit Bureau Defendants' Responses to Plaintiff's January 2020 Disputes

54.   On January 24, 2020, Equifax received Plaintiff's written dispute. Upon receipt, Equifax sent an ACDV to Synchrony Bank regarding Plaintiff's disputed Synchrony Bank/Shop HQ tradeline, Acct #604577120931XXXX.

55.     Synchrony Bank wrongfully verified for Equifax that the Synchrony Bank/ShopHQ tradeline, Account #604577120931XXXX, was accurately reporting on Plaintiff's Equifax credit report.

56.     On or about February 9, 2020, Equifax completed its reinvestigation of Plaintiff's dispute, which consisted of nothing more than parroting Synchrony Bank's inaccurate verification and reporting of the late payments regarding the account and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation. Equifax verified the disputed late payments as accurate and failed to correct the disputed late payments, which continued to appear on Plaintiff's Equifax credit report.

57.     Upon receipt of Plaintiff's written dispute, Experian sent an ACDV to Synchrony Bank regarding Plaintiff's disputed Synchrony Bank/Shop HQ tradeline, Acct #604577120931XXXX.

58.     Synchrony Bank wrongly verified for Experian that the Synchrony Bank/ShopHQ tradeline, Acct #604577120931XXXX, was accurately reporting on Plaintiff's Experian credit report.

59.     On or about February 17, 2020, Experian completed its reinvestigation of Plaintiff's dispute, which consisted of nothing more than parroting Synchrony Bank's inaccurate verification and reporting of the late payments regarding the account and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation. Experian verified the disputed late payments as accurate

and failed to correct the disputed late payments, which continued to appear on Plaintiff's Experian credit report.

60.     On January 24, 2020, Trans Union received Plaintiff's written dispute. Upon receipt, Trans Union sent an ACDV to Synchrony Bank regarding Plaintiff's disputed Synchrony Bank/Shop HQ tradeline, Acct #604577120931XXXX.

61.     Synchrony Bank wrongly verified to Trans Union that the Synchrony Bank/ShopHQ tradeline, Acct #604577120931XXXX, was accurately reporting on Plaintiff's Trans Union credit report.

62.     On or about February 15, 2020, Trans Union completed its reinvestigation of Plaintiff's dispute, which consisted of nothing more than parroting Synchrony Bank's inaccurate verification and reporting of the late payments and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation. Trans Union verified the disputed late payments as accurate and failed to correct the disputed late payments, which continued to appear on Plaintiff's Trans Union credit report.

63.     Synchrony Bank violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to remove all inaccurate late payments reporting regarding the Synchrony Bank/ShopHQ tradeline, Acct #604577120931XXXX.

**Plaintiff's March 2020 Disputes with the Credit Bureau Defendants**

64.     On or about March 13, 2020, Plaintiff sent a second round of written disputes via certified mail to Equifax, Experian, and Trans Union, disputing the late payments on the Synchrony Bank/ShopHQ tradeline, Acct #604577120931XXXX, specifically stating that she has never missed a payment on her account, that she returned merchandise previously purchased on the account, and that ShopHQ confirmed the account has a $0.00 balance. Plaintiff requested that the credit bureau defendants correct their reporting of this account immediately.

## The Credit Bureau Defendants' Responses to Plaintiff's March 2020 Disputes

65.     On or about March 21, 2020, Equifax responded to Plaintiff's dispute stating that it was unable to locate her credit file based on the information provided.

66.     Equifax failed to conduct a reinvestigation of Plaintiff's March 2020 dispute in violation of 15 U.S.C. § 1681i.

67.     Equifax failed to remove the disputed tradeline, which continued to appear on Plaintiff's Equifax credit report.

68.     Experian sent an ACDV to Synchrony Bank regarding Plaintiff's disputed Synchrony Bank/Shop HQ tradeline, Acct #604577120931XXXX.

69.     Synchrony Bank wrongly verified for Experian that the Synchrony Bank/ShopHQ tradeline, Acct #604577120931XXXX, was accurately reporting on Plaintiff's Experian credit report.

70.     On or about April 10, 2020, Experian completed its reinvestigation of Plaintiff's dispute, which consisted of nothing more than parroting Synchrony Bank's inaccurate verification and reporting of the late payments and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation. Experian verified the disputed late payments as accurate and failed to correct the disputed late payments, which continued to appear on Plaintiff's Experian credit report.

71.     Trans Union sent an ACDV to Synchrony Bank regarding Plaintiff's disputed Synchrony Bank/Shop HQ tradeline, Acct #604577120931XXXX.

72.     Synchrony Bank wrongly verified for Trans Union that the Synchrony Bank/ShopHQ tradeline, Acct #604577120931XXXX, was accurately reporting on Plaintiff's Trans Union credit report.

73.     On or about March 22, 2020, Trans Union completed its reinvestigation of Plaintiff's dispute, which consisted of nothing more than parroting Synchrony Bank's inaccurate verification and reporting of the late payments and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation. Trans Union verified the disputed late payments as accurate and failed to correct the disputed late payments, which continued to appear on Plaintiff's Trans Union credit report.

74.     Synchrony Bank violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to update and/or remove the inaccurate late payments.

**Plaintiff's Credit Application for Mortgage Financing is Denied by Fidelity Funding Mortgage in May 2020**

75.     In or about May 2020, Plaintiff began seeking financing for a home mortgage loan.

76.     On or about May 22, 2020, Plaintiff submitted a credit application for a home mortgage loan with Fidelity Funding Mortgage.

77.     Upon submitting a credit application to obtain the best financing rate for her home mortgage loan, Fidelity Funding Mortgage obtained Plaintiff's credit reports and scores from Equifax, Experian, and Trans Union.

78.     Fidelity Funding Mortgage denied Plaintiff's credit application as a result of the contents of her credit reports and scores as provided by Equifax, Experian, and Trans Union.

79.     Fidelity Funding Mortgage relied on the contents of Plaintiff's Equifax, Experian, and Trans Union credit reports and scores at the time it denied her credit application. As of May 22, 2020, the date Fidelity Funding Mortgage accessed Plaintiff's Equifax, Experian, and Trans Union credit reports and scores, all three credit reports contained inaccurate, derogatory late payments reported by Synchrony Bank in regard to the Synchrony Bank/ShopHQ account, Acct #604577120931XXXX.

80.     Equifax, Experian, and Trans Union's inaccurate credit reporting adversely impacted Plaintiff's credit scores and caused Fidelity Funding Mortgage to deny Plaintiff's credit application.

## Plaintiff's December 2020 Disputes with the Credit Bureau

## Defendants

81.    On or about December 8, 2020, Plaintiff sent another round of written disputes via certified mail to Equifax, Experian, and Trans Union disputing the late payments on the Synchrony Bank/ShopHQ tradeline, Acct #604577120931XXXX, specifically stating, among other things, as follows:

> I received a copy of my credit report and I am writing to dispute items that need to be corrected immediately. Your blatantly inaccurate credit reporting is causing me to suffer significant stress, anxiety, anger, fear of financial ruin, humiliation, and embarrassment every time I try to obtain credit. I have highlighted the disputed account and payments on the attached copy of my Trans Union/Equifax/Experian credit report. The reasons why the disputed items should be corrected immediately are indicated below:
>
> Account Name: SYNCB/SHOPHQ PLLC
> Account Number: 604577120931XXXX
> Inaccurate Late Payments Reported:
>
> 2019:
>
> October 2019: 30 days late
> November 2019: 60 days late
> December 2019: 90 days late
>
> 2020:
>
> January 2020: 120 days late
> February 2020: 120 days late
>
> Reason for Corrections:
>
> I have never missed a payment on this account! This reporting is false, inaccurate and is damaging my credit score! I paid my SYNCB/SHOP account in full in May 2019 and owed no additional monies thereafter! I have attached documents proving this! I have never once missed a monthly payment on this account! **This account should be**

**<u>reporting as a Satisfactory Account and with a Pay Status of:
Current; Paid or Paying as Agreed.</u>**

Please remove these inaccurate late payments from my credit report
immediately as they are negatively affecting my credit score and
making it difficult to obtain credit.

82.     Plaintiff attached to her written dispute letters a copy of her
inaccurate credit reports and ShopHQ records establishing proof of payment
in full for Acct #604577120931XXXX. Plaintiff also included her current
address, social security number, and date of birth so that the credit bureau
defendants could locate her credit file.

### Plaintiff's December 2020 Dispute with Synchrony Bank

83.     In or about December 2020, Plaintiff sent a written dispute via
certified mail to Synchrony Bank, disputing the late payments reported on her
credit reports regarding the Synchrony Bank/ShopHQ tradeline, Acct
#604577120931XXXX, specifically stating that she has never missed a payment on
her account, that she returned merchandise previously purchased on the account,
and that ShopHQ confirmed the account has a $0.00 balance. Plaintiff requested
that Synchrony Bank correct its reporting of the account immediately and
communicate the correction to the credit bureaus.

### The Credit Bureau Defendants' Responses to Plaintiff's December 2020 Disputes

84.     Equifax failed to conduct a reinvestigation of Plaintiff's dispute or
respond to Plaintiff's dispute, in violation of 15 U.S.C. § 1681i.

85. Experian sent an ACDV to Synchrony Bank regarding Plaintiff's disputed Synchrony Bank/Shop HQ tradeline, Acct #604577120931XXXX.

86. Synchrony Bank wrongly verified for Experian that the Synchrony Bank/ShopHQ tradeline, Acct #604577120931XXXX, was accurately reporting on Plaintiff's Experian credit report.

87. On or about December 22, 2020, Experian completed its reinvestigation of Plaintiff's dispute, which consisted of nothing more than parroting Synchrony Bank's inaccurate verification and reporting of the late payments and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation. Experian verified the disputed late payments as accurate and failed to correct the disputed late payments, which continued to appear on Plaintiff's Experian credit report.

88. Trans Union sent an ACDV to Synchrony Bank regarding Plaintiff's disputed Synchrony Bank/Shop HQ tradeline, Acct #604577120931XXXX.

89. Synchrony Bank wrongly verified to Trans Union that the Synchrony Bank/ShopHQ tradeline, Acct #604577120931XXXX, was accurately reporting on Plaintiff's Trans Union credit report.

90. On or about January 5, 2021, Trans Union completed its reinvestigation of Plaintiff's dispute, which consisted of nothing more than parroting Synchrony Bank's inaccurate verification and reporting of the late payments and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation. Trans Union verified the disputed late payments as accurate and failed to correct

the disputed late payments, which continued to appear on Plaintiff's Trans Union credit report.

91.     Synchrony Bank violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to update and/or remove the inaccurate late payments.

### Synchrony Bank's Response to Plaintiff's December 2020 Dispute

92.     On or about January 8. 2021, Synchrony Bank sent Plaintiff written correspondence stating that she owed a debt in the amount of $685.63.

### Plaintiff's February 2021 Disputes with the Credit Bureau Defendants

93.     On or about February 23, 2021, Plaintiff sent another round of written disputes via certified mail to Equifax, Experian, and Trans Union disputing the late payments on the Synchrony Bank/ShopHQ tradeline, Acct #604577120931XXX, specifically stating as follows:

> I received a copy of my credit report and I am writing to dispute items that need to be corrected immediately. Your blatantly inaccurate credit reporting is causing me to suffer significant stress, anxiety, anger, fear of financial ruin, humiliation, and embarrassment every time I try to obtain credit. I have highlighted the disputed account and payments on the attached copy of my Trans Union/Equifax/Experian credit report. The reasons why the disputed items should be corrected immediately are indicated below:
>
> Account Name: SYNCB/SHOPHQ PLLC
> Account Number: 604577120931XXXX
> Inaccurate Late Payments Reported:
>
> 2019:

October 2019: 30 days late
November 2019: 60 days late
December 2019: 90 days late

2020:

January 2020: 120 days late
February 2020: 120 days late

Reason for Corrections:

I have never missed a payment on this account! This reporting is false, inaccurate and is damaging my credit score! I paid my SYNCB/SHOP account in full in May 2019 and owed no additional monies thereafter! I have attached documents proving this! I have never once missed a monthly payment on this account! **This account should be reporting as a Satisfactory Account and with a Pay Status of: Current; Paid or Paying as Agreed.**

Please remove these inaccurate late payments from my credit report immediately as they are negatively affecting my credit score and making it difficult to obtain credit.

94.     Plaintiff attached to her written dispute letters a copy of her inaccurate credit reports and ShopHQ records establishing proof of payment in full for Acct #604577120931XXXX. Plaintiff also included her current address, social security number, and date of birth so that the credit bureau defendants could locate her credit file.

**Plaintiff's February 2021 Dispute with Synchrony Bank**

95.     On or about February 23, 2021, Plaintiff sent a written dispute via certified mail to Synchrony Bank, disputing the late payments reported on her credit reports regarding the Synchrony Bank/ShopHQ tradeline, Acct #604577120931XXXX, specifically stating that she has never missed a payment on

her account, that she returned merchandise previously purchased on the account, and that ShopHQ confirmed the account has a $0.00 balance. Plaintiff requested that Synchrony Bank correct its reporting of the account immediately and communicate the correction to the credit bureaus.

### Synchrony Bank's Response to Plaintiff's February 2021 Dispute

96.    On or about March 1. 2021, Synchrony Bank sent Plaintiff written correspondence requesting that she provide additional information prior to conducting a review of her dispute, despite the fact that Plaintiff provided more than enough information to Synchrony Bank as part of her dispute.

### The Credit Bureau Defendants' Responses to Plaintiff's February 2021 Disputes

97.    On or about March 3, 2021, Equifax sent Plaintiff a letter requesting additional identification information prior to reinvestigating her dispute, despite the fact that Plaintiff provided more than enough identification information to Equifax as part of her dispute. Equifax failed to conduct a reinvestigation of Plaintiff's dispute or respond to Plaintiff's dispute, in violation of 15 U.S.C. § 1681i.

98.    Experian sent an ACDV to Synchrony Bank regarding Plaintiff's disputed Synchrony Bank/Shop HQ tradeline, Acct #604577120931XXXX.

99.    Synchrony Bank wrongly verified to Experian that the Synchrony Bank/ShopHQ tradeline, Acct #604577120931XXXX, was accurately reporting on Plaintiff's Experian credit report.

100.   On or about March 19, 2021, Experian completed its reinvestigation of Plaintiff's dispute, which consisted of nothing more than parroting Synchrony Bank's inaccurate verification and reporting of the late payments and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation. Experian verified the disputed late payments as accurate and failed to correct the disputed late payments, which continued to appear on Plaintiff's Experian credit report.

101.   Trans Union sent an ACDV to Synchrony Bank regarding Plaintiff's disputed Synchrony Bank/Shop HQ tradeline, Acct #604577120931XXXX.

102.   Synchrony Bank wrongly verified to Trans Union that the Synchrony Bank/ShopHQ tradeline, Acct #604577120931XXXX, was accurately reporting on Plaintiff's Trans Union credit report.

103.   On or about April 3, 2021, Trans Union completed its reinvestigation of Plaintiff's dispute, which consisted of nothing more than parroting Synchrony Bank's inaccurate verification and reporting of the late payments and returned the results of its 15 U.S.C. § 1681i dispute reinvestigation. Trans Union verified the disputed late payments as accurate and failed to correct the disputed late payments, which continued to appear on Plaintiff's Trans Union credit report.

104.   Synchrony Bank violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to update and/or remove the inaccurate late payments.

105.   To date, the credit bureau defendants continue to report the inaccurate, late payments on the disputed Synchrony Bank/ShopHQ tradeline, Acct #604577120931XXXX, on. Plaintiff's credit reports.

106.   As a standard practice, Equifax, Experian, and Trans Union do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the furnisher despite numerous court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

107.   Consistent with their standard policies and procedures, Equifax, Experian, and Trans Union automatically generated their "investigation" results once the furnisher, Synchrony Bank, provided its response to Plaintiff's disputes, verifying the disputed late payments as accurate, and no employee from any of the credit bureau defendants took any additional steps to review Plaintiff's

documentation after the furnisher provided its responses to Plaintiff's numerous disputes.

108.   Instead, Equifax, Experian, and Trans Union blindly accepted Synchrony Bank's incomplete version of the facts and continued to report the inaccurate, derogatory information on Plaintiff's credit reports.

109.   Equifax, Experian, and Trans Union continue the practice of parroting the response from furnishers even though they have been repeatedly sued for failing to conduct reasonable investigations as required by the FCRA.

110.   Equifax, Experian, and Trans Union do not intend to modify their dispute-processing procedures because doing so would drastically increase their operating expenses.

111.   Instead, Equifax, Experian, and Trans Union intentionally choose not to comply with the FCRA to lower their costs. Accordingly, Equifax, Experian, and Trans Union's violations of the FCRA are willful.

112.   As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

## **CLAIMS FOR RELIEF**

### **COUNT I**

**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum**
**Possible Accuracy**
**(First Claim For Relief Against Defendants Equifax, Experian, and**
**Trans Union)**

113.   Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-112 as if fully stated herein.

114.   Defendants Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintains concerning Plaintiff.

115.   As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from her credit; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

116.   Defendants' conduct, action, and inaction was willful, rendering them liable for actual and statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

117.   Plaintiff is entitled to recover attorney's fees and costs from Defendants Equifax, Experian, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform Reasonable Reinvestigation**
**(Second Claim For Relief Against Defendants Equifax, Experian,**
**and Trans Union)**

118.    Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-112 as if fully stated herein.

119.    Defendants Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiff's credit file after they received notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to Synchrony Bank; by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

120.    As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from her credit; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

121.    Defendants' conduct, action, and inaction was willful, rendering them liable for actual and statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

122.   Plaintiff is entitled to recover attorney's fees and costs from Defendants Equifax, Experian, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT III
## 15 U.S.C. § 1681s-2(b)
## Failure to Conduct an Investigation of the Disputed Information and Review all Relevant Information Provided by the Consumer (First Claim For Relief Against Defendant Synchrony Bank)

123.   Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-112 as if fully stated herein.

124.   Defendant Synchrony Bank published the negative entries to Defendants Equifax, Experian, and Trans Union.

125.   Defendant Synchrony Bank violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Plaintiff's disputes of Defendant Synchrony Bank's representations; by failing to review all relevant information regarding the same; by failing to accurately respond to Defendants Equifax, Experian, and Trans Union; by failing to correctly report results of an accurate investigation to Defendants Equifax, Experian, and Trans Union; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of Defendant Synchrony Bank's representations to Defendants Equifax, Experian, and Trans Union.

126.   As a result of Defendant Synchrony Bank's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from her credit; detriment to her credit rating; the expenditure of time

and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

127.    Defendant Synchrony Bank's conduct, action, and inaction was willful, rendering it liable for actual and statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

128.    Plaintiff is entitled to recover attorney's fees and costs from Defendant Synchrony Bank in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

a)    Determining that Defendants, jointly and severally, negligently and/or willfully violated the FCRA;

b)    Awarding Plaintiff actual damages, statutory damages, and punitive damages as provided by the FCRA;

c)    Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and

d)    Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

129.    Plaintiff demands a trial by jury.

Dated:      06/30/2021              THE CONSUMER PROTECTION FIRM

                                    */s/ William Peerce Howard*
                                    William "Billy" Peerce Howard, Esq.
                                    Florida Bar No.: 0103330
                                    Billy@TheConsumerProtectionFirm.com
                                    The Consumer Protection Firm
                                    401 East Jackson Street, Suite 2340
                                    SunTrust Financial Center
                                    Tampa, FL 33602
                                    Telephone: (813) 500-1500
                                    Facsimile: (813) 435-2369

                                    BERGER MONTAGUE PC
                                    Hans W. Lodge, MN Bar No. 0397012*
                                    1229 Tyler Street NE, Suite 205
                                    Minneapolis, MN 55413
                                    Telephone: (612) 607-7794
                                    Fax: (612) 584-4470
                                    hlodge@bm.net
                                    *Pro Hac Vice Forthcoming*

                                    *ATTORNEYS FOR PLAINTIFF*